```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                         TAMPA DIVISION


MARK G. COMERFORD,

        Plaintiff,

v.                                  CASE NO:   8:08-cv-648-T-33TBM

JOHN E. POTTER, POSTMASTER
GENERAL, UNITED STATES
POSTAL SERVICE,

        Defendant.
_____/
```

### ORDER

This cause comes before the Court pursuant to Defendant John E. Potter, Postmaster General, United States Postal Service's ("USPS") Renewed Motion for Summary Judgment, which was filed on April 26, 2011. (Doc. # 54). Plaintiff Mark Comerford filed a Memorandum in Opposition on May 10, 2011. (Doc. # 55). For the reasons set forth herein, the Motion is denied.

### I.   Factual Background & Procedural History

Comerford has worked for the USPS since November 1980. (Comerford Depo., Doc. # 20, Exh. 1 at 20:7-11). He was born in 1952 and was 52 years old in 2004 during the time of the alleged age discrimination. (Doc. # 20, Exh. 2).

Comerford, in January 2004, was working as a letter carrier in Tallahassee and arranged a job trade with Daniel Turner, a 56-year-old carrier, to transfer from Tallahassee to Bradenton.[1] (Comerford Depo., Doc. # 20, Exh. 1 at 22:17-23:16; Doc. # 20, Exh. 3). Comerford's transfer was denied by Bradenton Postmaster Joe Gerace in March 2004, citing an unsatisfactory attendance record. (Doc. # 20, Exh. 6). After the denial, Comerford filed a complaint with the USPS Equal Employment Opportunity ("EEO") department, alleging that Comerford's age was Gerace's real reason for denying the request. (Doc. # 20, Exh. 9). Comerford also filed a union grievance through the NALC-USPS Dispute Resolution Process on March 24, 2004, alleging Gerace's denial violated the USPS union contract, which states transfers will not be unreasonably denied because of sick leave. (Doc. # 20, Exh. 8). Comerford's EEO complaint was unsuccessfully mediated by the parties, Comerford and Gerace, in April 2004, but the union grievance was resolved in Comerford's favor on April

---

[1] Pursuant to a contract between the National Association of Letter Carriers ("NALC") and USPS, carriers within the same pay grade may trade jobs upon management's approval at the post offices involved. See Feb. 2003 NALC-USPS Joint Contract Administration Manual, § 14 (Voluntary Transfers), at 12-42 & 12-43 (Doc. # 20, Exh. 4).

2

21, 2004, and his trade request was approved. (Doc. # 33-3; Doc. # 20, Exh. 8).

Comerford started work at the Bradenton Post Office on June 28, 2004. (Doc. # 20, Exh. 10). His direct supervisor was Roger Parker, the station manager was John Romano, and the postmaster for the Bradenton Post Office was Gerace. (Doc. # 20, Exh. 11).

While at the Bradenton Post Office, Comerford was disciplined multiple times. He received a letter of warning on July 26, 2004, a seven-day no-time-off suspension on August 26, 2004, a seven-day no-time-off suspension on September 16, 2004, and a seven-day no-time-off suspension on October 20, 2004. (Doc. # 33-8 at 1-2, 8-9, 19-21, 27-28). There was also a request for disciplinary action dated October 27, 2004, requesting a 14-day suspension for Comerford. (Id. at 34). The reasons for these disciplinary actions included unprofessional time estimates for delivery, dilatory tactics, and not delivering express packages in the required manner. (Doc. # 33-8).

Comerford successfully grieved the first suspension and that suspension was overturned on October 8, 2004. (Doc. # 20, Exh. 15). Comerford also challenged his second and

3

third suspensions through union grievances. (Doc. # 20, Exh. 17; Doc. # 20, Exh. 18 at 4).

Due to the discipline, which Comerford believed to be unwarranted and in retaliation for his age discrimination complaint, Comerford contacted the postmaster in Littleton, Colorado, on September 4, 2004, for transfer to that branch. (Doc. # 20, Exh. 18 at 4). On September 13, 2004, Comerford filed an informal EEO charge alleging retaliation. In October 2004, Comerford retained an EEO advocate and filed a formal EEO complaint against Gerace, Parker and Romano, alleging age discrimination and retaliation. Comerford's complaint did not identify the specific discriminatory actions complained of, but attached the warning letter and Comerford's response to the second notice of suspension. (Doc. # 20, Exh. 21).

Comerford's transfer request was approved, and Comerford was transferred to the post office in Littleton, Colorado, effective November 13, 2004. (Doc. # 20, Exh. 19). In order to not impede the transfer to Colorado, Comerford dismissed the outstanding union grievances, and Gerace agreed not to object to removing the suspensions from Comerford's file. (Doc. # 20, Exh. 17 & Exh. 18 at 4).

4

This transfer resulted in a loss of his seniority and his regular, full-time work status.

On November 27, 2004, the USPS EEO informed Comerford that it would investigate the first two seven-day suspensions but not the warning letter because the EEO complaint was filed 49 days after the warning letter was issued and, as such, the warning letter was not brought to the attention of the EEO counselor within 45 days of the discriminatory matter as required by federal regulations. (Doc. # 20, Exh. 21). In November 2007, the EEO issued a decision finding no discrimination or retaliation. (Doc. # 20, Exh. 23 at 5-6 & Exh. 24).

On April 4, 2008, Comerford filed a Complaint alleging age discrimination and retaliation. (Doc. # 1). On March 31, 2009, USPS filed a motion for summary judgment. (Doc. # 20). On November 2, 2009, this Court granted USPS's motion as to both the age discrimination and retaliation claims. (Doc. # 42). Thereafter, Comerford appealed the entry of summary judgment as to the retaliation claim only. (Doc. # 47). The Eleventh Circuit found that "the district court erred by granting summary judgment to USPS on the ground that Comerford failed to engage in statutorily protected

5

expression." (Doc. # 50 at 4).  As a result, the Eleventh Circuit vacated this Court's Order with respect to Comerford's retaliation claim and remanded for further proceedings consistent with its opinion.  (Id.) Accordingly, only Comerford's claim of retaliation remains before the Court, and USPS now renews its Motion for Summary Judgment as to that claim.

## II. **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing

6

law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (quoting Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a

genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981).

### III. Analysis

Comerford alleges that because he filed the April 2004 EEO complaint and successfully challenged Gerace's decision to deny his transfer to Bradenton, Gerace retaliated against him. (Doc. # 1 at ¶ 12; Comerford Depo., Doc. # 20, Exh. 1 at 81:13-24, 97:14-98:1, 128:3-10, 130:1-5). A federal employee who is a victim of retaliation due to the filing of a complaint of age discrimination may assert a claim under the federal-sector provision of the Age Discrimination in Employment Act of 1967 (ADEA). Gomez-Perez v. Potter, 553 U.S. 474, 477 (2008).

In order to establish a prima facie case of retaliation, a plaintiff must show that: (1) he was engaged

8

in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between his protected activity and the adverse employment action. See Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002). In order to establish the causal link required as part of his or her prima facie case, a plaintiff "need only establish that 'the protected activity and the adverse action were not wholly unrelated.'" Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)(quoting EEOC v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993)).

Once a plaintiff has established a prima facie case, the defendant must then come forward with "legitimate reasons for the employment action to negate the inference of retaliation." Id. If a defendant offers legitimate reasons for the employment action, a plaintiff then bears the burden of proving, through a preponderance of the evidence, that the reasons offered are pretextual. Id.

**A.   Prima Facie Case**

The Court finds that Comerford has established a prima facie case of retaliation. USPS concedes that the Eleventh Circuit found that Comerford engaged in statutorily

9

protected expression and concedes that Comerford suffered an adverse employment action when he was issued seven-day no-time-off suspensions on August 26, 2004, and September 16, 2004. USPS only challenges Comerford's ability to prove a causal link between Comerford's filing the April 2004 EEO complaint and the suspensions.

USPS argues that Comerford's immediate supervisor and disciplinary official, Parker, was not aware of Comerford's EEO activity and, therefore, could not have acted on it. (Doc. # 20, Exh. 26). To establish a causal link, a plaintiff must show that the decision-makers were aware of the protected conduct. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000).

Comerford asserts that Gerace directed Parker to discipline Comerford in retaliation for his April 2004 EEO complaint. In support, Comerford offers a declaration by Thomas Scardina, a USPS employee in Bradenton, in which Scardina asserts, in pertinent part, that:

> 4) Mr. Parker told me that he had been directed by Mr. Gerace to see that Mr. Comerford got out of Bradenton Main Office. Apparently he was unhappy that Mr. Comerford had transferred in as a result of a mutual trade, that Mr. Gerace had disapproved.

> 5) Despite Gerace's disapproval, Mr. Comerford, as a result of an EEO and a Union grievance, had somehow gotten it set aside and his transfer to Bradenton had been approved or directed.
>
> 6) Mr. Gerace was very unhappy about that and I was told by Mr. Parker that he had been authorized to "do whatever it takes" to get Mr. Comerford out of Bradenton Main.

Scardina Decl., Doc. # 33-7 at ¶¶ 4-6. This, at the very least, creates a genuine issue of material fact as to Parker's knowledge of the April 2004 EEO complaint or Gerace's role as the actual decision-maker.

In addition, assuming the decision-makers were aware of the protected activity, the Eleventh Circuit has held that close temporal proximity gives rise to an inference of causal connectivity sufficient to support a prima facie case of retaliation. Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986); Goldsmith, 996 F.2d at 1163-64. In order for mere temporal proximity, without more, to be sufficient evidence of causality, cases uniformly hold that the temporal proximity must be "very close." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001). The Eleventh Circuit has held seven and eight weeks to be sufficiently proximate to create a causal nexus. See Farley

11

v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999)("The charge was made May 19, 1995 and Farley was fired seven weeks later on July 10, 1995. We find this timeframe sufficiently proximate to create a causal nexus for purposes of establishing a prima facie case."); Berman v. Orkin Exterminating Co., Inc., 160 F.3d 697, 702 (11th Cir. 1998)(finding a causal connection because "the first transfer occurred within five weeks after Berman had filed his EEOC charge and both transfers occurred within a couple of months of the complaint"). A three-to-four month period, however, is insufficient to suggest causation. See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). Because Comerford experienced the first suspension approximately nine weeks after he arrived at the Bradenton Post Office, there is close temporal proximity and a correlative inference of causal connectivity. Accordingly, a prima facie case of retaliation has been established.

  **B.** **Legitimate, Nondiscriminatory Reasons & Pretext**

  USPS has offered legitimate reasons for its employment actions. Specifically, USPS alleges that the reasons for the disciplinary actions include unprofessional time estimates for delivery, dilatory tactics, and not delivering

12

express packages in the required manner. Therefore, Comerford bears the burden of proving, through a preponderance of the evidence, that the reasons offered are pretextual. "A plaintiff may do so 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir. 1989)(quoting Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1445 (11th Cir. 1985)); see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 514 (1993); Diaz v. Transatl. Bank, 367 Fed. Appx. 93, 97 (11th Cir. 2010).

To show that the employer's reasons were pretextual, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence" or that "the employer's proferred 'legitimate reasons were not what actually motivated [the employer's] conduct.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citations omitted).

13

However, an employee cannot succeed in demonstrating pretext simply by quarreling with the wisdom of the employer's reason or substituting his or her own business judgment for that of the employer. Diaz, 367 Fed. Appx. at 97; Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000). Rather, the employee "must meet the reason head on and rebut it" with evidence of pretext. Id. An employer "may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Abel v. Dubberly, 210 F.3d 1334, 1339 n.5 (11th Cir. 2000)(citations omitted).

Comerford argues that Gerace's evasive testimony more than satisfies evidence of pretext. Comerford points to Gerace's denial of any knowledge of the April 2004 EEO complaint or any memory of participating in the related mediation.

Gerace testified in his deposition:

Q. All right. Did you hear there was a [union] grievance filed in addition to the EEO charge?
A. I didn't know about an EEO charge.

Gerace Depo., Doc. 33-2 at 50:23-25.

14

Q. Well, what happened next, after you said [Comerford] couldn't [transfer to Bradenton], and you threw away his letter that said he wanted you to reconsider?
A. I received either a call or an E-Mail from labor -
Q. Uh-huh.
A. - saying that Mr. Comerford was coming on a [union] grievance settlement.
Q. Okay. Did you hear anything else about a mediation conference for an EEO case?
A. No, sir.
Q. Show you this, this is a document...[regarding a] mediation conference in Tallahassee; did you receive that letter?
A. I don't recall this letter.
...
Q. Sir, again, I'm going to show you again [the letter], it says that there's going to be a [mediation] conference in Tallahassee on Thursday, April 24th, did you - you don't recall ever seeing that letter?
A. No, sir.
Q. Is it addressed to you?
A. Yes, sir.
...
Q. So, can we assume by that that you probably looked at it, and either threw it away or gave it to your secretary?
A. No, sir.
Q. You're telling me you never got it?
A. That's what I'm saying sir. I do not recall seeing this.
Q. Then why is it in your files?
A. I do not recall seeing this letter.
...
A. And I don't recall going to Tallahassee either.
Q. Did you participate by telephone?
A. I - again, I don't recall the letter.
Q. Well, now I'm asking you about the [mediation] conference, do you recall

15

          participating in a [mediation] conference by
          telephone?
   A.    No, sir, I do not.

Gerace Depo., Doc. 33-2 at 46:21-49:3.

Comerford highlights the implausibility of Gerace's denial of any knowledge of an EEO complaint with the following documents: the EEO April 12, 2004, letter to Gerace regarding scheduling mediation of the EEO complaint; an e-mail from Gerace responding to the EEO Dispute Resolution Specialist that he would be attending the mediation by phone; the EEO Agreement to Mediate signed by Gerace; a memorandum to Comerford and Gerace confirming the scheduling of the mediation; a No Agreement Letter to Comerford and Gerace indicating that both appeared for the scheduled mediation (Gerace by phone) and that the dispute was not resolved through mediation; and an April 28, 2004, letter to Gerace from an EEO Dispute Resolution Specialist advising Gerace that Comerford had been given a notice of right to file a formal EEO complaint, which would necessitate a management response. (Doc. # 33-4).

The Court agrees that Gerace's testimony regarding his lack of knowledge of the EEO complaint is evidence that indirectly shows that USPS's proferred explanation of its

adverse actions may be unworthy of credence. In addition, Scardina declared that he had been told by Parker that Gerace had directed Parker to "do whatever it takes" to get Comerford out of the Bradenton Post Office because Gerace was unhappy that the trade denial had been set aside as a result of the EEO complaint and the union grievance. Scardina Decl., Doc. # 33-7 at ¶¶ 4-6. Gerace's testimony coupled with Scardina's declaration persuades this Court that a discriminatory reason more likely motivated the employer than the legitimate, nondiscriminatory reasons given by USPS. See Carter, 870 F.2d at 584. Based on the evidence submitted to the Court, there exist genuine issues of material fact as to whether USPS's adverse actions were motivated by an impermissible discriminatory animus, and whether the reasons given for the disciplinary actions were pretext for retaliating against Comerford for filing an EEO age discrimination complaint.

### C. Damages

USPS argues that even if Comerford can prove his claim of retaliation, he has not suffered any recoverable damages. Relief under the ADEA is limited to "such legal relief or equitable relief as will effectuate the purposes of this

17

chapter." 29 U.S.C. § 633a(c). Neither punitive damages nor compensatory damages for pain and suffering are recoverable under the ADEA.[2] Goldstein, 758 F.2d at 1446 (citing Dean v. American Sec. Ins. Co., 559 F.2d 1036, 1038 (5th Cir. 1977), cert. denied, 434 U.S. 1066 (1978)). Fringe benefits, however, are ordinarily recoverable. Id. (citing Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1185-86 (6th Cir. 1983)). Accordingly, even with the exclusion of compensatory and punitive damages, the Court finds that Comerford has alleged recoverable damages including the loss of fringe benefits such as his seniority. As such, USPS's argument as to damages does not provide a basis for summary judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Renewed Motion for Summary Judgment (Doc. # 54) is **DENIED.**

---

[2]Comerford encourages the Court to adopt the Seventh Circuit Court of Appeals' approach that permits recovery of compensatory damages in retaliation cases. The Court declines Comerford's invitation. Eleventh Circuit case law excluding compensatory damages in retaliation cases is binding precedent on this Court. See, e.g., Goldstein, 758 F.2d at 1446.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>13th</u> day of December, 2011.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record